**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL IRWIN WEINBERG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-CV-2706-BH** |
| | § | |
| **NANCY A. BERRYHILL, ACTING,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | **Consent[1]** |

## MEMORANDUM OPINION AND ORDER

Based on the relevant findings, evidence, and applicable law, the Commissioner's decision

is **REVERSED**, and the case is **REMANDED** for further proceedings.

## I. BACKGROUND

Michael Irwin Weinberg (Plaintiff) seeks judicial review of the final decision of the

Commissioner of the Social Security Administration (Commissioner) denying his claim for a period

of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act),

and for supplemental security income (SSI) under Title XVI of the Act. (docs. 1;24.)

### A.    Procedural History

On December 24, 2015, Plaintiff filed his application for SSI and DIB, alleging disability

beginning on July 2, 2015. (doc. 16-1 at 83-84, 93-102.)[2]  His claim was denied initially on May

11, 2016, and upon reconsideration on June 15, 2016. (*Id.* at 81-92,103-124.)  On July 15, 2017,

---

[1]By consent of the parties and the order of transfer dated December 21, 2018 (doc. 20), this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 147.) He appeared and testified at a hearing on July 26, 2017. (*Id.* at 44-80.) On September 26, 2017, the ALJ issued a decision finding Plaintiff not disabled and denying his claims for benefits. (*Id.* at 14-24.)

Plaintiff appealed the ALJ's decision to the Appeals Council on September 29, 2017. (*Id.* at 585.) The Appeals Council denied his request for review on August 10, 2018, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-10.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

## B.    Factual History

### 1.    Age, Education, and Work Experience

Plaintiff was born on December 9, 1959, and was 57 years old at the time of the initial hearing. (doc. 16-1 at 56.) He graduated high school and could read and write. (*Id.*) He had previous work experience as steel salesman and a stocker. (*Id.* at 48-49.)

### 2.    Medical Evidence

From August 2014 through October 2014, Plaintiff presented to Christus St. Elizabeth Hospital (Christus) for chronic neck pain, medication refills, vertigo, dizziness upon standing, muscle aches, fatigue, and a back injury from a fall in his bathroom. (*Id.* at 429, 521-25.) His pain, which he rated at five out of ten, was exacerbated by movement but relieved by rest. (*Id* at 428.) At his physical exam, he appeared healthy and well-nourished and had full range of motion in his neck, normal motor strength and tone, and normal movement in all extremities. (*Id.* at 522, 527.)

On January 7, 2015, Plaintiff met with Dr. Howard Wilcox, M.D. (Dr. Wilcox), for lower back pain, left leg pain, and numbness in the bottom of his feet. (*Id.* at 516.) He complained of pain in his lower back when carrying groceries, difficulty walking, and numbness and tightness in his

legs, and he was most comfortable when reclining, walking or standing. (*Id.*) Imaging of his lumbar spine revealed moderate degenerative spine changes and a mild compression fracture. (*Id.* at 440.)

On March 12, 2015, Plaintiff met with Angela Rori, N.P. (NP Rori), for back pain, which he described as throbbing, constant, and aggravated by twisting. (*Id.* at 509.) He also reported numbness, tingling, and pain radiating down his leg. (*Id.*) Physical exam revealed cervical spine spasms, reduced range of motion, tenderness on palpation, and lumbar/lumbosacral spine spasms. (*Id.* at 512.) Plaintiff was assessed with lumbar radiculopathy and was prescribed Tylenol-Codine and cyclobenzaprine, and it was recommended that he follow up with a neurospine surgeon. (*Id.*)

On April 20, 2015, Plaintiff met with Dr. Troy Jones, M.D. (Dr. Jones), for an MRI of his cervical spine without contrast. (*Id.* at 436.) Comparison to previous images taken in 2011 revealed marked degenerative changes in the mid and lower cervical spine with reversal of normal lordotic curvature in the region. (*Id.*) Plaintiff also had large anterior osteophytes from C3 inferiorly, and moderate to marked disc space height narrowing at C4-C5, C5-C6, C6-C7 and C7-T1. (*Id.*) There were marked mid to lower cervical spine degenerative changes with multilevel spinal stenosis and narrowing, similar to his prior MRI, as well as interval increase in size of a possible sebaceous cyst at the upper right back/lower neck. (*Id.* at 437.) Dr. Jones recommended clinical correlation. (*Id.*)

On May 13, 2015, Plaintiff met with Dr. Wilcox for nausea and a "strange sensation in neck and head[.]" (*Id.* at 502.) He complained of episodes of a sharp sensation that started in his neck that radiated to his head. (*Id.*) Plaintiff had a c-spine stenosis but was hesitant about having spinal decompression surgery because he did not have anyone to help him during the recovery period. (*Id.*) He deferred having the procedure and was expected to have several exacerbation episodes. (*Id.*)

On July 10, 2015, Plaintiff presented to Christus, complaining of nausea, coughing,

dizziness, and a mild aching pain in his chest, and CT imaging of his chest was performed. (*Id.* at 384.) The physician's impression was that Plaintiff's complaints were was due to alcohol abuse, hyperbilirubinemia, and hypokalemia. (*Id.* at 388-89.) Plaintiff was instructed to follow up with his primary care physician and the alcohol/detox/rehab and life resource groups. (*Id.*)

On September 29, 2015, Plaintiff met with NP Rori to discuss disability because he had been off work since July 2015. (*Id.* at 648.) He was to initiate disability paperwork with the social security office, and the physician's statement would be completed when the paperwork was received from the social security office. (*Id.* at 651.) On October 28, 2015, he again met with NP Rori, complaining of fatigue, weight loss, abdominal pain, nausea, vomiting, muscle aches, arthralgia/joint pain, and back pain. (*Id.* at 490.) Physical examination revealed normal motor strength and tone, joints, normal movement of all extremities, full range of neck motion, and limited ambulation/ambulated with a limp. (*Id.*)

On January 9, 2016, Plaintiff sought care from Christus for vomiting, and he felt hot, cold and achy with abdominal pain. (*Id.* at 330.) An ultrasound revealed that his gallbladder was contracted. (*Id.*) From January 9, 2016 through January 11, 2016, he was hospitalized for his abdominal pain. (*Id*. at 332.) Plaintiff was given IV fluids, pain control, and had multiple work ups, including a CT of the abdomen and pelvis and a HIDA scan. (*Id.*) "[A] history of chronic alcoholism" was noted, and he left against medical advice due to being evicted from his home. (*Id.*)

On April 22, 2016, Plaintiff met with Dr. Pfeil (Dr. Pfeil) for neck and back pain, prostate problems, and asthma symptoms. (*Id.* at 587.) He complained of a history of neck pain, lower back pain that radiated down to his legs, and numbness in his left hand, for which he used over the counter medications, as well as limitations in sitting, standing or walking for long periods, lifting

and carrying, bending and stooping. (*Id.* at 587.) His physical exam revealed ambulation with a slight limp on his right leg, unsteadiness with tandem walking and heel/toe standing, inability to stand on heels and toes due to unsteadiness, and inability to bend all the way over and get back up due to lower back pain. (*Id.*) Plaintiff was able to squat all the way down but had a hard time getting back up. (*Id.*) His straight leg raises were negative bilaterally, and he had decreased sensation in his left hand in an ulnar nerve distribution pattern. (*Id.*) Dr. Pfeil noted limitations in working overhead, lifting and carrying more than 20 pounds, bending and stooping, and sitting, standing or walking more than one to two hours before changing positions. (*Id.*)

On April 26, 2016, x-ray imaging of Plaintiff's cervical spine revealed two projections that demonstrated multilevel moderately severe changes of spondylosis with disc space loss, endplate osteophytes, disc space narrowing, diffuse facet arthrophathy, and soft tissue vascular calcification. (*Id.* at 593.) Compared to a 2011 study, Plaintiff's severe degenerative changes appeared to have worsened. (*Id.*)

### 3. <u>Hearing</u>

On July 26, 2017, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id.* at 44-80.) Plaintiff was represented by an attorney. (*Id.* at 46.)

#### a. **Plaintiff's Testimony**

Plaintiff testified that he was 5'9", approximately 165 pounds, 57 years old, and divorced and he had been living in his truck for the last year and a half with his dog. (*Id.* at 56-59.) He worked as a steel salesman, which required him to actively call customers, and a stocker. (*Id.* 49-50.) He began working full-time at Dallas Animal Services as an intake person on March 7, 2017, at an hourly rate of $10.37. (*Id.* at 51-52, 54.)

Plaintiff stopped working in 2015 because he injured his back while working at North Shore Supply. (*Id.* at 59.) He went out to the deck on a rainy day when trying to clock out and fell because of his neck and "equilibrium problems." (*Id.* at 59-60, 63.) He did not file a workman's compensation claim, but he missed a week of work because he was unable to walk and was let go from his position as a result. (*Id.* at 60-61.) While at home, he had to crawl to the bathroom because of his back injury. (*See id.* at 60.) He collected unemployment benefits for six months and looked for work in sales and as a forklift driver. (*Id.* at 60-61.)

Plaintiff was hospitalized and underwent a lot of tests but left against medical advice because he was being evicted from his apartment and needed to get his dog. (*Id.* at 65.) He denied an alcohol abuse problem and suggested that his fatty liver may have been caused by something else. (*See id.* at 64.) He could not live with his mother because she lived in an assisted living facility and did not have any relatives that he could live with. (*Id.* at 69.)

When questioned by his attorney, Plaintiff testified that he had constant pressure and pain in his neck. (*Id.* at 70.) The worst part was the disorientation and equilibrium problems. (*Id.* at 70.) He could not walk and turn his head at the same time because he would trip and fall, which occurred daily at his current job. (*See id.* at 70-71.) When he moved from Beaumont to Dallas, he had neck issues, numbness in his hands, his back, and feet, as well as shooting pains in the bottom of his feet, and he experienced a lot of pain and discomfort. (*Id.* at 73.) He had pain in his neck and his back when sitting down. (*Id.* at 74.)

### b. VE's Testimony

The VE testified that a hypothetical individual that must avoid dusts, fumes, odors, and pulmonary irritants would not be able to perform any of Plaintiff's past work experience. (*Id.* at 78.)

According to her experience, a salesperson in the steel industry was out in the warehouse climbing, bending, and stooping. (*Id.* at 79.) She was unsure if Plaintiff could perform that work, but he had transferable skills, such as compiling lists of prospective customers for sales leads, traveling through an assigned territory, calling customers or perspective customers to solicit their orders or talk with customers, provide quote prices, credit terms, and prepare sales contracts. (doc. 23-1 at 38-39.) There were three light semiskilled jobs that would require little vocational adjustment or no new skill that Plaintiff could perform, including a general merchandise salesperson, DOT 279.357-034 (SVP 3, light), with approximately 3,000 jobs in Texas and 36,000 jobs nationally; group salesperson, DOT 259.357-010 (SVP 3, light), with approximately 500 jobs in Texas and 4,600 jobs nationally; fuel sales, DOT 269.357-010 (SVP 4, light), approximately 1,500 jobs in Texas and 17,000 jobs nationally. (*Id.* at 39.)

The VE then considered a hypothetical individual limited to sitting six hours, standing and walking no more than three hours, lifting 20 pounds occasionally, 10 pounds frequently, occasional climbing, balancing, stooping, kneeling, crouching, crawling, no climbing of ladders, ropes, or scaffolds, and avoiding dusts, fumes, odors, pulmonary irritants. (*Id.*) The hypothetical individual could perform past work. (*Id.* at 39-40.)

In response to questing by Plaintiff's attorney, the VE testified that a person who missed work consistently two times per week due to pain would not be able to sustain employment. (*Id.* at 40.) A person who was off task more than 20% of the time due to pain on a consistent basis would be unable to sustain employment. (*Id.*)

C.    **ALJ's Findings**

The ALJ issued his decision denying benefits on September 26, 2017. (doc. 16-1 at 14-24.)

At step one, he found that Plaintiff had not engaged in substantial gainful activity since July 2, 2015, the alleged onset date. (*Id.* at 16.) At step two, the ALJ found that he had the following severe impairments: cervicalgia and degenerative disc disease. (*Id.* at 17.) Despite those impairments, at step three, he found that Plaintiff had no impairments or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id.* at 18.)

Next, the ALJ determined that Plaintiff retained the RFC to perform light work; he could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. (*Id.* at 19.) He could stand and/or walk about six hours in an eight-hour workday, sit for six hours in an eight-hour workday and occasionally stoop, kneel, crouch, crawl, and climb, but must avoid concentrations of dust fumes and odors. (*Id.*) The ALJ found that Plaintiff was capable of performing his past relevant work as a sales person. (*Id.* at 22.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from July 2, 2015, through September 26, 2017. (*Id.* at 23-24.)

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).[3] Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558,

---

[3]The scope of judicial review of a decision under either the supplemental security income program or the social security disability program is the same. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). The relevant law and regulations governing the determination of claims under either program are also identical, so courts may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work,

> other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. RESIDUAL FUNCTIONAL CAPACITY

Plaintiff presents one issue for review:

> The ALJ's RFC determination is not supported by substantial evidence where, after failing to weigh the Consulting examiner's opinion, he gave little weight to the only other opinion in the record, the state agency, and impermissibly played doctor.

(doc. 24 at 4.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 416.945(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th

Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 416.945(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]."[4] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1. The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision or all the evidence that he rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564. Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings." *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations

_____

[4] On January 18, 2017, the Administration updated the rules on the evaluation of medical evidence. *See* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the rule that treating sources be given controlling weight was eliminated. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)"). Because Plaintiff filed his application before the effective date, the pre-2017 regulations apply.

omitted). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id*. Courts may not reweigh the evidence or substitute their judgment for that of the Secretary, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson*, 864 F.2d at 343 (citations omitted).

## A.   <u>Consulting Examiner's Opinion</u>

Plaintiff argues that the ALJ's determination is not supported by substantial evidence because he failed to weigh the consulting examiner's opinion, and that his failure to rely on any medical opinion to determine his RFC is expressly prohibited by *Ripley*. (doc. 24 at 10, 13.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529(b). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. *Id*. § 404.1527(c)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant. *Id*. § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id*. § 404.1527(c)(2). If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given

opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* § 404.1527(c)(1)–(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id*. A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455–56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at 458.

Here, the ALJ noted that Dr. Pfeil met with Plaintiff and assessed physical limitations due to his low back and neck pain. (doc. 16-1 at 20-21.) The ALJ also noted that no treating or examining physician opined that Plaintiff could not work. (*Id.* at 22.) Besides stating that he carefully considered all of the objective medical evidence and opinions, the ALJ never directly

13

assigned weight to or explained why he disregarded Dr. Pfeil's examining source opinion as to Plaintiff's physical limitations. (*Id.* at 22.) Because he gave little weight to the only other medical opinion in the record, the ALJ appears to have relied on his own opinion in making his RFC determination.

While the ALJ may choose to reject Dr. Pfeil's opinion, "he cannot independently decide the effects of Plaintiff's...impairments on [his ] ability to work, as that is expressly prohibited by *Ripley*." *Shugart v. Astrue*, No. 3:12-cv-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013). In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit instructed that when no medical statement of a claimant's RFC is provided, the court must focus on whether the ALJ's decision is supported by substantial evidence in the record. *Id*. In that particular case, the Fifth Circuit noted that the record contained a vast amount of evidence establishing that the claimant had a back problem, but it did not clearly establish the effect the condition had on his ability to work. *Id*. It remanded the case with instructions to the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id*. at 557-58. Notably, the Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's impairment substantially supported the ALJ's RFC assessment because it was unable to determine the effects of the claimant's condition, no matter how small, on his ability to work absent reports from qualified medical experts. *Id*. at 558 n. 27; *see also Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("[a]n ALJ may not–without the opinions from medical experts–derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own

unsupported opinion as to the limitations presented by the applicant's medical conditions."); *Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination).

Because the ALJ failed to expressly explain the weight given to examining medical opinions and instead independently decided the effects of Plaintiff's impairments, he erred in determining Plaintiff's RFC. *See Foley v. Colvin*, No. 3:14-CV-4176-BN, 2015 WL 5836173 at *5 (N.D. Tex. Oct. 2, 2015) (even though the ALJ identified examining medical opinions, his failure to "expressly explain the weight" given to them was error).

**B.    Harmless Error**

Plaintiff argues that the ALJ's failure to weigh Dr. Pfeil's medical opinion was harmful error. (*See* doc. 24 at 7-11; doc. 28 at 1.)

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988). "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

Here, Dr. Pfeil opined that Plaintiff was limited in working overhead, lifting and carrying more than 20 pounds, bending and stooping, and sitting, standing, or walking more than one to two hours before changing positions. (*Id.* at 589.) His examination showed that Plaintiff was able to

squat all the way down but had a hard time getting up; his straight leg raises were negative bilaterally; he was unable to bend all the way over and get back up due to back pain; had unsteadiness with tandem walking and heel/toe standing; and initially ambulated with a limp in his right leg. (*Id.*) He also had normal range of motion in his both his upper right and upper left extremities, normal range of motion in his lower left and lower right extremities, and reduced range of motion in cervical and dorsolumbar spine. (*Id.* at 589-90.)

Plaintiff visited several physicians over approximately a two-year period for pain in his neck, lower back, and abdomen. (*See* doc. 16-1 at 631, 633, 635.) His MRI showed lumbar disc degeneration, disc protrusion, and cervical spine degenerative changes. (*Id.* at 436-39.) Several of his physical exams indicated persistent back pain, neck pain and muscle aches.(*See id.* at 490, 512,516, 519,521, 525, 533, 535, 576, 593,619, 621,644, 646,652-53.) Plaintiff's October 2015 physical exam revealed he ambulated with a limp. (*Id* at 490.) Plaintiff's examining medical records are consistent with Dr. Pfeil's opinions regarding his physical limitations.

Had the ALJ considered Dr. Pfeil's opinion, he could have found additional limitations that would affect his RFC determination, and that Plaintiff was precluded from the jobs identified by the VE, including his past relevant work. The VE testified that if a person was off task more than 20% of the time due to pain on a consistent basis, that person would not be able to sustain employment. (doc. 23-1 at 40.) She also testified that a person who missed work consistently two times per week due to pain would not be able to sustain employment. (*Id.*)

The ALJ considered but gave little weight to the other opinions in the record, i.e., those of the state agency medical consultants (SAMCs) because "they overestimate[d Plaintiff's] restrictions." (*Id.* at 21.) The SAMCs determined that Plaintiff was able to stand and/or walk for

three hours in an eight-hour day; able to sit for six hours in an eight-hour day; and was limited to occasional postural activities. (*Id.* at 88-90.) On reconsideration, they affirmed these findings. (*Id.* at 109-11.) The ALJ may reject these opinions but must still support his RFC determination with substantial evidence. *See Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (the ALJ was entitled to reject the treating physician's opinion but the ALJ impermissibly relied on his own medical opinions to develop his factual finding). The ALJ's failure to rely on a medical opinion in determining Plaintiff's RFC casts doubt as to whether substantial evidence exists to support the finding that Plaintiff is not disabled. *See also Laws v. Colvin*, No. 3:14-CV-3683-B, 2016 WL 1170826 (N.D. Tex. Mar. 25, 2016) (reversing and remanding for further proceedings for lack of substantial evidence because the ALJ's failure to rely on a medial opinion in determining the plaintiff's RFC).

Accordingly, the ALJ's error was not harmless because it is not inconceivable that he would have reached a different decision had he considered Dr. Pfeil's opinions. *See McAnear v. Colvin*, No. 3:13–cv–4985-BF, 2015 WL 1378728, at *5 (N.D.Tex. Mar. 26, 2015)(finding remand was required because there was a realistic possibility of a different conclusion by the ALJ where the court was unsure of whether the ALJ considered the medical source's opinion and whether such a review would have changed the outcome of his decision); *Paul v. Colvin*, No. 3:12–cv–00130, 2013 WL 1294666-G (BH), at (N.D.Tex. Mar. 14, 2013)(finding the ALJ's error in failing to present good cause for rejecting a treating source's opinion was not harmless where it was not inconceivable that the ALJ would have reached a different conclusion had he considered the opinion); *Singleton v. Astrue*, No. 3:11–cv–2332-BN, 2013 WL 460066, at *6 (N.D.Tex. Feb. 7, 2013)(finding the ALJ's error in not considering the medical source opinion was not harmless and reversal and remand were

required because the court could not say what the ALJ would have done had he considered the opinion, and had he considered the opinion he might have reached a different decision)

## IV.  CONCLUSION

The Commissioner's decision is **REVERSED**, and the case is **REMANDED** to the Commissioner for further proceedings.

**SO ORDERED**, on this 25th day of March, 2020.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE